# AGNIFILO INTRATER

September 28, 2026

**VIA ECF**
The Honorable Margaret M. Garnett
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re: *United States v. Van Dyke*, 26-cr-00156 (MMG)**

Dear Judge Garnett:

We apologize for the series of letters, but Courts of Appeals keep issuing opinions in this new area of law that squarely support Mr. Van Dyke's motion to dismiss. *See* Dkts.32 and 36, supplementing Mr. Van Dyke's motion to dismiss the Indictment, Dkt.22 ("Mot.").

The Sixth Circuit issued the latest opinion (dated September 25, 2026 but made available today). In *KalshiEX LLC v. Schuler*, No. 26-3196, — F.4th —, 2026 WL 2884087 (6th Cir. Sept. 25, 2026), the Court held that the Commodity Exchange Act's "swap" definition, 7 U.S.C. § 1a(47)(A)(ii), must be construed narrowly, consistent with Van Dyke's motion.

*Schuler* confronted directly whether sports-event contracts qualify as swaps. The court held that "[t]he best reading of the statute … requires that the qualifying event be ***inherently associated*** with a 'potential financial, economic, or commercial consequence,' such that it would be ***common understanding*** that hedging financial risk or deriving pricing information for that event would be beneficial and would promote market stability." *Id.* at *11 (emphasis added). It further held that "[a]n event will be inherently associated with a financial consequence if it "itself has" such a consequence "without looking at externalities like potential downstream" consequences." *Id.* (citing *KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014, 1027 (D. Nev. 2025)). "Conversely, economic consequences that follow remotely from an event"—like the consequences the government alleges in the instant case—are not truly 'associated with' that event." *Id.*

Applying this interpretation of the statutory text, the court ultimately held that because "[t]here is no common understanding that [Kalshi's] sports-event contracts pertain to events that inherently have 'a potential financial, economic, or commercial consequence,'" they do not constitute "swaps." *Id.* at *15.

*Schuler* explicitly rejected multiple arguments identical to those made by the government here.

First, it rejected the argument that the word "potential" in the statute counsels a broader construction, holding that it "is better understood as modifying 'consequence,' not 'associated with'—meaning the financial consequence need not actually come to fruition, but it still must be inherently associated with the event." *Id.* at *11. That is the precise interpretation Van Dyke offered. *See* Dkt.31 at 2 ("Including the term 'potential' does not counsel a broader interpretation. Subpart (ii) relates to an uncertain future event or contingency, whose occurrence is only a possibility when a contract is executed. The specified event or contingency may never occur, so of course its consequences are only 'potential.'").

Second, the court also rejected the argument that the narrow reading is inconsistent with Congress's enumeration of particular swaps in subpart (iii) that are "not intrinsically associated with financial consequences"—such as "weather swaps." *Id.* at *12 n.7. To the contrary, the court concluded "the fact that Congress defined 'swap' to include a few particular such swaps does not change that the definitions, by and large, refer only to instruments that are." *Id.* "That Congress specifically enumerated non-financial events as swaps, given their historic and widely accepted association with economic risk, does not suggest that we should read § 1a(47)(A)(ii) broadly." *Id.* Again, this is the very argument Van Dyke made in his motion. *See* Dkt.31 at 3 ("Congress specifically enumerated weather and emissions swaps in Subpart (iii), granting the CFTC express regulatory authority… Both facilitate price discovery.").

Third, *Schuler* observed that the narrow reading of Subpart (ii) "creates substantially less surplusage" in the statute than the broader reading. *Id.* at *13. Citing the CEA's purpose, the court concluded—as Van Dyke argued—that the narrow reading "accords with the CEA's core purpose" of protecting the "national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information." *Id.* (quoting 7 U.S.C. § 5(a)).[1]

Finally, *Schuler* directly addressed the fair-notice and lenity arguments in Van Dyke's motion. In language that could have been ripped from Van Dyke's motion to dismiss, the court warned that a broader reading of the CEA "would … expose countless Americans to potential criminal liability for partaking in even the most unsophisticated, off-DCM gambling activity," a result "[t]he Supreme Court has cautioned [courts to] avoid [when] interpreting statutes." *Id.* at *14. *Schuler* emphasized that an event contract is not a swap unless it is "commonly understood" to be the kind of contract that can be used to hedge. *Id.* at *12. That is not the case with the event contracts at issue here, and the indictment does not allege anything akin to this element.

[1] Notably, *Schuler*'s holding was based on "straight-up statutory construction" grounds without resort to the additional canons of construction Van Dyke argued in his motion, such as the "major question doctrine" and "federalism canon," which further counsel the narrow reading. *Id.* at *16 n.9.

* * * *

Again, the Indictment's CEA counts are <u>only</u> viable if the at-issue event contracts are "swaps" within the meaning of § 1a(47)(A)(ii). Two circuits within three weeks have now construed that text far more narrowly than the government assumed. Moreover, the decisions highlight that the majority of courts to consider the question now side with Van Dyke. The Court should dismiss the Indictment.

Respectfully submitted,



Teny Geragos, Esq.
Zach Intrater, Esq.
Jason Driscoll, Esq.
Daniela Manzi, Esq.
AGNIFILO INTRATER LLP

/s/

Mark J. Geragos, Esq.
Tina Glandian, Esq.
GERAGOS & GERAGOS P.C.

cc: All counsel (via ECF and email)