**AGNIFILO INTRATER**

November 26, 2026

**<u>VIA ECF</u>**
The Honorable Margaret M. Garnett
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re: *United States v. Van Dyke*, 26-cr-00156 (MMG)**

Dear Judge Garnett:

On November 21, 2026, the government made a belated disclosure related to Amin Shams—an expert it would like to use at trial. *See* Ex. A. The disclosure outlines new analyses and opinions not previously disclosed. The Court should preclude the government from offering these belated supplemental opinions and analyses at trial. *See* Fed. R. Crim. P. 16(d)(2)(C).

**A. Background**

The Court's operative expert disclosure date was September 24, 2026. Dkt.35 (amending Dkt.18). The government produced its expert disclosure concerning Shams on that date. *See* Dkt.50, Ex. A. The defense did not move to strike Shams's entire report. Instead, on October 26, the defense took a targeted approach and only sought to strike a single, clearly improper, opinion in paragraph 8—that Van Dyke "may have been more knowledgeable than the average market participant about the probabilities of the real world outcomes." Dkt.50, Ex. A ¶8. This opinion is improper for multiple reasons outlined in Van Dyke's motion to preclude. *See* Dkt.49.

After its initial disclosure the government did not provide any further information on this topic for nearly two months, until November 21, about two weeks before trial. On that date, the government made a supplemental disclosure stating that Shams will now "(1) testify regarding two of the counterparties that traded with Polymarket Account [redacted]; and (2) provide analysis, which further informs the opinion disclosed in paragraph 8 of his September 24, 2026 disclosure." Ex. A.[1] The notice further outlined that one of Van Dyke's wagers "involved approximately 24 counterparties," and discussed Shams's purported additional "review of Polymarket trading data and the blockchain" to identify two of the counterparties by name and location. Ex. A ¶¶2-4. In connection with Sham's supplemental disclosure, the government also produced excel spreadsheets containing data from thousands of Polymarket transactions.

The supplemental disclosure further outlines that "Professor Shams has since conducted additional analyses of Polymarket Account [redacted] activity in the *Maduro Out by January 31, 2026?* market compared to other participants in that market." *Id.* ¶5. Specifically, "Professor Shams conducted three analyses of data from the Polygon blockchain and the Polymarket API."

[1] The belated disclosure appears to be an attempt to salvage Shams's inadmissible opinion discussed in Van Dyke's motion to exclude. *See* Dkt.49.

*Id.* These additional analyses are detailed at Ex. A ¶5(a)-(c) and involve (i) an analysis of "the profits of all 3,948 accounts that traded in the *Maduro Out by January 31, 2026?* market," (ii) a "sort[ing of] the population of accounts active in the *Maduro Out by January 31, 2026?* market by net position at the time that the market resolved," and (iii) "the trader[s'] total profits … compared to the average trade price across all trades made by th[e] account[s] in this market." *Id.* In a cover letter accompanying the supplemental disclosure, the government stated that "notice is provided in abundance of caution as the[ analyses] are observations and summaries of data, which do not require notice under Rule 702." Ex. B.

**B. The Court Should Preclude the Untimely Supplemental Opinions And Analyses**

The government is wrong. The additional analyses and opinions obviously qualify as "opinions" and/or "the bases and reasons for them" within the meaning of Rule 16(a)(1)(G)(iii). They needed to have been included in the government's initial expert disclosure to be considered timely and proper. Indeed, the government itself states the opinions and analyses "underl[ie] Professor Shams's opinions." Ex. B. The government has no good reason for its delay.

The delay is significant not just because it violates this Court's Order. It is also significant because of its content—the substance that the government waited until two weeks before trial to disclose. It relates to the single paragraph that is the most problematic from Shams's initial report, and the single paragraph Van Dyke moved to exclude (paragraph 8). The belated disclosure also includes additional content wholly absent from the initial disclosure, expanding the scope of Shams's testimony with additional topics and analyses. The Court should not permit this on the eve of trial when Van Dyke has no meaningful opportunity to respond, and when the supplemental disclosure does not fix the problems with the initial disclosure—it remains inadmissible under Rules 702, 704, and 403.

Rule 16 requires parties to disclose, for each expert witness, "a **complete** statement of all opinions that the government will elicit from the witness in its case-in-chief . . . [and] the bases and reasons for them." Fed. R. Crim. P. 16(a)(1)(G)(iii) (emphasis added). That text was added to the rule in 2022 to "address[] two shortcomings of the prior provisions on expert witness disclosure: the lack of adequate specificity regarding what information must be disclosed, and the lack of an **enforceable deadline** for disclosure." Fed. R. Crim P. 16, Notes of Advisory Committee on Rules—2022 Amendment (emphasis added). Among other things, the Advisory Committee noted the amendments were "intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.* Even before the 2022 amendment, the advisory notes to Rule 16 recognized that the purpose of the expert notice requirement was "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim P. 16, Notes of Advisory Committee on Rules—1993 Amendment.[2] The 2022

[2] Even prior to 2022, "[m]erely identifying the general topics about which the expert will testify [wa]s insufficient; rather, the summary must reveal the expert's actual opinions." *United States v. Kaufman*, 19 Cr. 504 (LAK), 2021 WL 4084523, at *19 (S.D.N.Y. Sept. 8, 2021) (collecting cases); *United States v. Sturman*, 96 Cr. 318 (BSJ), 1998 WL 126066, at *1 (S.D.N.Y. Mar. 20, 1998) (a "general description of possible bases does not meet the requirements of Rule 16(b)(1)(C)"); *see also United States v. Ulbricht*, 14 Cr. 68 (KBF), 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1, 2015), aff'd, 858 F.3d 71 (2d Cir. 2017).

amendments enhanced the notice requirement and emphasized the need for enforcing clear disclosure deadlines. *See United States v. Weiner*, No. 22 Cr. 19 (PGG), 2024 WL 82729, at *5-6 (S.D.N.Y. Jan. 8, 2024); *United States v. Kwok*, No. 23 Cr. 118 (AT), 2024 WL 1773143, at *1 (S.D.N.Y. Apr. 24, 2024).

At least one judge in this District has already "put[] the Government on notice" of its new Rule 16 obligations further stating, "[g]oing forward, the Court will not tolerate [] shoddy noncompliance with amended Rule 16." *United States v. Mrabet*, 703 F. Supp. 3d 442, 445 (S.D.N.Y. 2023).

The government's belated disclosure demonstrates noncompliance with the rule here, and Van Dyke will be prejudiced at trial as a result should the Court not exclude the supplemental opinions and analysis. After the government made its initial disclosure of Shams's opinions, Van Dyke made a strategic decision not to retain an expert of his own to confront Shams's opinions because the at-issue opinion lacked any expert bases or analyses to begin with and was otherwise inadmissible.

Van Dyke instead moved to preclude Shams's opinion in paragraph 8 of his September 24, 2026 disclosure in part for the reason that Shams failed to apply his purported expertise or conduct any real analyses when reaching the opinion. *See* Dkt.49. Now, the government has effectively conceded that Van Dyke was right by attempting to shore up Shams's opinion with the late supplemental disclosure claiming Shams has finally conducted the "analysis … which further informs the opinion disclosed in paragraph 8 of his September 24, 2026 disclosure." Ex. A at 1. This includes data for thousands of transactions upon which Shams purportedly has now relied.

The problem is that Van Dyke does not have time at this juncture to retain an expert qualified to confront these new opinions, analyses, or voluminous data sets. To do so would require finding such an expert and then analyzing the blockchain and wagering data at issue. That data is voluminous and purportedly involves 24 counterparties to Van Dyke's bets specifically and 3,948 accounts total that wagered on one of the at-issue contracts. It would further require statistical analyses of these accounts to determine their "net position[s]," Ex. A at ¶5(b), and "the trader's total profits … compared to the average trade price across all trades made by that account," *id.* ¶5(c), requiring further analysis of the blockchain. That is all assuming Shams's analyses were complete and the datasets he selected were not cherrypicked. Only by retaining an expert and conducting an independent analysis—for which there is no time—could Van Dyke properly assess these issues.

Prior to implementation of the more demanding amended Rule 16, Courts in this District interpreted "timely" disclosure of expert testimony to be at least 30 days before trial. *See, e.g.*, *United States v. Freeman*, No. 18 Cr. 217 (KMW), 2019 WL 2590747, at *3 (S.D.N.Y. June 25, 2019) ("no later than four weeks before trial"); *United States v. Ojeikere*, No. 03 Cr. 581 (JGK), 2005 WL 425492, at *8 (S.D.N.Y. Feb. 18, 2005) ("no later than one month before trial"); *United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356, at *21 (S.D.N.Y. Jan. 2, 2001) (requiring expert witness disclosure thirty days before trial). The government's supplemental disclosure came far later, without leave from the Court, and leaves insufficient remaining time to fairly confront the disclosure at trial.

The point of such timelines—and amended Rule 16—is to avoid precisely the type of problem that the government is causing here: A party is entitled to rely—for trial preparation and presentation purposes—on the expert disclosures made pursuant to the Court's order. That allows a criminal defendant to order their affairs and know what arguments they need to be prepared to confront. The government has made that impossible here. There is no reason that Shams could not have conducted these analyses originally, and the government provides no excuse. But they have effectively made it impossible for the defense to rebut a critically important aspect of this case.

Parties must take the 2022 amendment to Rule 16 "seriously if it is intended to have its intended salutary effect." *Mrabet*, 703 F. Supp. 3d at 444. The government has not done so here. The appropriate remedy is preclusion of the supplemental opinions and analyses.

Respectfully submitted,

________________________
Zach Intrater
Teny Geragos
Jason Driscoll
Daniela Manzi
AGNIFILO INTRATER LLP

/s/
Mark J. Geragos, Esq.
Deanna Paul, Esq.
GERAGOS & GERAGOS P.C.

cc: Counsel for the government (via ECF and email)